UNION TERMINAL ELEVATOR CO., PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 16271.   Promulgated November 7, 1928.

*W. Yale Smiley, Esq.*, for the petitioner.
*A. H. Fast, Esq.*, for the respondent.

58

OPINION.

LANSDON: The petitioner has abandoned its contention that the Commissioner erroneously computed the depreciation sustained by its physical assets in the taxable years. We therefore approve the action of the Commissioner as to issues (2) and (3) as set forth in our preliminary statement. The respondent through his attorney in open court confessed error as to issue (4). We therefore hold that in the recomputation of the petitioner's tax liability for each of the years before the Board the petitioner's taxable income as determined by the Commissioner should be reduced by the amount of $3,591.51.

A single question of fact remains for our consideration—the actual cash value of the property paid in at date of incorporation for shares of stock of the par value of $175,000. Section 326 (a) (2) of the Revenue Act of 1918, which governs here, provides that invested capital shall include:

Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus: * * *

In support of its contention that the property paid in at date of incorporation for shares of stock had an actual cash value equal to or in excess of $175,000, the petitioner relies on the stipulated facts and on the evidence of witnesses familiar with the cost and use of grain elevators. The cost of the tangible property was carried on the books of the predecessor at the date of the incorporation of the petitioner at $322,192.74, with no write-down or reserve for depreciation. In September, 1895, a financial concern which is now the largest bank and trust company in Minneapolis underwrote a bond issue on the tangible property of the predecessor corporation in the amount of $175,000. An officer of such institution testified that its policy has always been to loan not more than 50 per cent of the value of elevator property.

D. L. Raymond, who has been in the grain business since 1895, secretary of the petitioner since its organization, and who is familiar with elevator properties, testified that in his opinion the depreciated cost of the elevator at January 18, 1907, was not less than $300,000. John F. Suhring, an appraisal engineer who has made valuations of property since 1907, testified that he made a detailed survey and appraisal of the elevator property of the petitioner in 1927 and found that the depreciated cost of such property in 1907 was $277,380. Arthur H. Lang, an elevator engineer, testified that he has been familiar with elevator properties in Minneapolis for many years, that he first inspected the property of the petitioner in 1903 or 1904, that he has inspected it twice yearly since that time, that he was familiar with the purchase and sale of such properties in 1907, and that in his opinion the tangible assets here in question had a fair market value at January 18, 1907, in the amount of $265,000.

In support of his determination of the actual value of the property paid in for stock at January 18, 1907, the respondent relies on the resolution authorizing the sale of the property, as set forth in our findings of fact. The petitioner contends that this resolution at most goes no further than to authorize a sale conditioned on certain requirements set forth therein and that as the sale was not made the resolution has no weight as evidence of the value of the property. Our attention is also called to the fact that the resolution was not adopted until some four or five months after the property was acquired by the petitioner, and that in the year 1907 there was a bank panic that began about the middle of the year and increased in gravity until the end thereof. In these circumstances we can not regard the resolution adopted by the directors of the petitioner on May 28, 1907, as conclusive evidence of the value of the property in question at January 18 of the same year.

After careful consideration of the stipulation and testimony we are of the opinion that there is a clear preponderance of evidence sufficient to establish the contention of the petitioner and we have therefore found as a fact that at January 18, 1907, the tangible property paid in to the petitioner for shares of stock had an actual cash value of not less than $175,000.

In conformity with our decision in *Cornelius Cotton Mills*, 4 B. T. A. 255, we hold that we have no jurisdiction over the year 1920, for which no deficiency has been asserted by the Commissioner, and accordingly dismiss the proceeding for that year.

*Decision will be entered under Rule 50.*